Filed 10/27/14  In re K.K. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>K.K.,<br><br>        Defendant and Appellant. | E059765<br><br>(Super.Ct.No. J249618)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor, and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

In April 2013, appellant K.K. and his coparticipant, D.S., broke into an apartment to steal 43 DVDs. They were subsequently convicted of burglary and receiving stolen property. (Pen. Code, §§ 459, 496.)[1]

After the jurisdictional hearing, the defense made a motion to dismiss or for a new trial (§ 1538.5), based on *Brady*[2] error, because the prosecution had not disclosed pertinent information about one of the responding police officers, Michael Cardenas. The information about Officer Cardenas relates to his termination in 2004 as an LAPD police officer. The information was not kept confidential at the trial level where it is generally described in K.K.'s new trial motion. Therefore, although the parties filed sealed and redacted appellate briefs, the information is not entitled to protection on appeal. Nevertheless, we will not republish the specific information in our opinion because it is not necessary to our disposition.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

[2] *Brady v. Maryland* (1963) 373 U.S. 83, 87; *People v. Salazar* (2005) 35 Cal.4th 1031, 1042-1043.

On appeal, K.K. contends the juvenile court erred when it denied his motion based on the prosecution's discovery violation. However, K.K. does not establish he suffered any prejudice as a result. The trial court found the information about Officer Cardenas was not material and that, even when the testimony of Officer Cardenas was disregarded, sufficient evidence proved the offenses beyond a reasonable doubt. The trial court declared K.K. a ward of the court and granted him probation.

We affirm.

II

FACTUAL AND PROCEDURAL BACKGROUND

*A. Prosecution Evidence*

On April 21, 2013, at approximately 9:30 p.m., Barstow apartment resident, Lakija McPheters, heard someone trying to break into the apartment next to hers. McPheters's daughter, Dyunna Dougal, also heard a noise. Outside her window, she saw a person's leg dangling from an awning above their apartment and she heard banging on the wall. Dougal saw a person—wearing blue and white basketball shorts and a grey sweatshirt— sitting on the wall outside her apartment and looking up at another person dangling from the awning. McPheters also saw the person sitting on the wall and she called the police.

Officers Daniel Arthur and Cardenas were dispatched separately to the apartment complex. The two suspects were described as "Black males," one wearing blue and white basketball shorts. Officer Cardenas positioned himself outside the apartment complex to observe the apartments' front doors.

3

Two individuals, matching the suspects' description, descended the stairs near apartment 14. K.K. wore blue and white basketball shorts and held a stack of DVDs. One of the boys made eye contact with Officer Cardenas; both immediately turned around and began quickly walking away. Officer Cardenas alerted Officer Arthur that the two suspects were headed toward him.

Officer Arthur ordered the boys to the ground. K.K. possessed 43 DVDs. When Officer Arthur handcuffed K.K., he spontaneously stated that he was trying to return some DVDs to his friend, Christina, who lived in apartment 14. Neither boy could provide Christina's last name and phone number.

The officers then observed a bent window screen on the ground. The window to apartment 14 was slightly open and displayed handprints. An awning below the second floor apartments was about nine feet above the ground and difficult for one person to access alone. The front door of apartment 14 was slightly open without any signs of forced entry. Inside the apartment Officer Arthur found a DVD with packaging similar to the DVDs in K.K.'s possession.

Shayna Bradford, the occupant of apartment 14, was out of town that evening but she had locked the apartment before departing, except for a screened window which she left open about two to three inches. Bradford testified that she kept hundreds of bootleg DVDs—which she had received from her father— in the room with the open window. Bradford identified the 43 DVDs recovered from K.K. as being hers. Finally, Bradford testified that no one named Christina lived with her.

4

*B. Defense Evidence*

Two different women testified they were outside the courtroom when they overheard a conversation between Bradford and the deputy district attorney, Kit Davis, in which Bradford told Davis that she did not want to testify and that nothing was missing from her home. The second woman admitted she was not certain Bradford actually stated that nothing was missing but she believed Bradford had said she did not want to testify.

K.K. testified he was walking home from the residence of his friend, Crystal, when he was stopped by Officer Arthur. The DVDs belonged to Crystal. K.K. denied taking the movies from apartment 14. On cross-examination, K.K. admitted he was wearing blue and white striped basketball shorts and a grey sweatshirt that evening. He could not remember where he or Crystal lived in the complex. He denied that he had walked down the apartment stairs, as Officer Cardenas had testified.

*C. Rebuttal Evidence*

After K.K. was taken into custody, he did not mention a friend named Crystal, only Christina, and he did not claim to be uncertain about which apartment he was coming from when he was confronted by the officers. Bradford had admitted some DVDs were taken but she did not care because she had already watched them.

*D. Motion for New Trial*

Shortly after the jurisdictional hearing in July 2013, the prosecutor learned there was information about Officer Cardenas that had not been disclosed to K.K. K.K. made a motion to dismiss, or for new trial, based on a *Brady* violation. The People conceded that

5

the information should have been provided to K.K. before the jurisdictional hearing. However, the People explained that—because different computer systems exist in the District Attorney's office for the adult and juvenile units—the information about Officer Cardenas was unavailable on the juvenile unit's system. The prosecutor did not learn about the information until after the jurisdictional hearing, at which point the prosecutor asked the juvenile court to provide the sealed information to the defense.

The juvenile court found the nondisclosure was inadvertent. K.K. argued that, had he known about Officer Cardenas, he would have conducted his defense differently, placing more emphasis on the issue of credibility. The People countered that even without Officer Cardenas's testimony, there was sufficient evidence to prove beyond a reasonable doubt that K.K. and his coparticipant committed the offenses. The court announced it would order Officer Cardenas's testimony stricken and review the remaining evidence to determine whether K.K. was prejudiced by the failure to disclose the impeachment evidence.

Ultimately, the juvenile court denied K.K.'s motion. The court found the prosecution's failure to disclose evidence was not willful. Out of an abundance of caution, the court struck any reference to Officer Cardenas's testimony. The court acknowledged that Officer Cardenas could have been impeached but the court concluded that information dating from 2004 would not have strongly impaired Officer Cardenas's credibility. However, the court found there was enough evidence to support the true findings as to burglary and receipt of stolen property: "I will indicate that my findings

6

are based on the testimony and, specifically, what the court was most convinced by was the timing. That the phone calls to 911 were still going on while the second officer was detaining the minors in the area of the burglary. He detained them. The proceeds from the burglary [were] on the one minor. The other minor made at least a vague attempt to run. And I am convinced beyond a reasonable doubt that there is sufficient evidence to believe that each of them have committed the crime."

## III

## MOTION FOR NEW TRIAL

K.K. argues the juvenile court erred when it denied his motion for new trial and that the juvenile court's decision to strike testimony was insufficient to remedy the prejudice he suffered. In *People v. Salazar, supra,* 35 Cal.4th at pages 1043 and 1050, the court explained a defendant is required to show that, absent the discovery violation, he would have received a more favorable outcome: "'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' [Citation.] Prejudice, in this context, focuses on 'the materiality of the evidence to the issue of guilt and innocence.' [Citations.] Materiality, in turn, requires more than a showing that the suppressed evidence would have been admissible [citation], that the absence of the suppressed evidence made conviction 'more likely' [citation], or that using the suppressed evidence to discredit a witness's testimony 'might have changed the

outcome of the trial' (*ibid.*). A defendant instead 'must show a "reasonable probability of a different result."' [Citation.]"

Generally, impeachment evidence is considered material if the witness at issue supplied the only evidence linking the defendant to the crime but not if the testimony of the witness is corroborated by other testimony. (*People v. Salazar, supra*, 35 Cal.4th at p. 1050.) Reviewing courts also consider how nondisclosure affected the defense investigation and trial strategy. (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1132, disapproved of on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

Here, the prosecutor conceded the impeachment evidence was inadvertently suppressed. However, the suppression did not cause prejudice to K.K. Officer Cardenas was not the only witness whose testimony implicated K.K. The two neighbors and the other officer testified they saw K.K. and D.S. at the scene. Officer Arthur testified about the condition of apartment 14. Bradford testified about the condition of her apartment and her ownership of the DVDs. K.K. himself blurted out incriminating admissions when he was being handcuffed. Even without Officer Cardenas's testimony, sufficient corroborating evidence established that K.K. had broken into Bradford's apartment and taken the DVDs.

Furthermore, the juvenile court employed the three-prong *Brady* analysis and assessed the evidence in the same manner as a reviewing court: "A defendant . . . 'must show a "reasonable probability of a different result [had the evidence been admitted]."'" (*People v. Salazar, supra*, 35 Cal.4th at p. 1043.) Here, by striking the testimony of

8

Officer Cardenas, the juvenile court gave K.K. the benefit of the doubt, especially because the impeachment evidence would have had limited impact on the issue of credibility.

## IV

## DISPOSITION

No reasonable probability exists that the outcome of the jurisdictional hearing would have been different.  The juvenile court properly denied the motion for a new trial.

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

9